<hr />

## FIENGLAS v. NEW AMSTERDAM CASUALTY CO.

(Municipal Court of City of New York, Borough of Manhattan, Sixth District. January 5, 1915.)

INSURANCE (§ 665*)—ACTION—INSURANCE AGAINST LARCENY—SUFFICIENCY OF EVIDENCE.

In an action upon a policy covering loss by burglary and larceny, affirmative evidence *held* to show a loss of jewelry by theft, entitling insured to a recovery; evidence beyond a reasonable doubt not being required.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

Action by Nathan Fienglas against the New Amsterdam Casualty Company. Judgment for plaintiff.

Milton M. Blumenthal, of New York City, for plaintiff.

Carl Schurz Petrasch, of New York City (Sidney L. Teven, of New York City, of counsel), for defendant.

OPPENHEIMER, J. This action is brought to recover $500 under a policy of burglary and larceny insurance, issued by the defendant to the plaintiff. This case was tried before the court and a jury. At the close of the plaintiff's case, the defendant rested without offering any evidence, and both sides moved for a direction of a verdict. It was thereupon agreed between the attorneys that the case be decided by the court without a jury. There being no contradictory evidence, and the plaintiff and his witnesses being absolutely trustworthy, the court must accept as true the facts testified to by them. Those facts are substantially as follows:

In January, 1914, in consideration of an annual premium paid by the plaintiff, the company issued to him its policy of insurance against loss by burglary or theft of property belonging to the plaintiff or any member of his household. The amount of the insurance was limited to the sum of $1,000, and the policy ran for a period of one year. The wife of the plaintiff, who resided with him at No. 1161 Forty-Sixth street, Borough Park, Brooklyn, owned certain jewelry consisting of a pair of earrings, one single stone engagement ring, one wedding ring, and one cluster ring, containing a large number of small diamonds. The value of the jewelry was more than $500. This jewelry was kept by Mrs. Fienglas, when not worn by her, in a jewel case on the top of her dresser inside the bedroom of her home, and upon the night of April 2, 1914, upon retiring, she removed her rings and placed them with the earrings in the jewel case. The jewelry was still there on the

following morning, April 3d. On that day her husband, the plaintiff, left home as usual for business, and the children attended school, with the exception of the eldest daughter, who remained in her room practically throughout the day. Mrs. Fienglas remained at her home and inside the house throughout the entire day. She had no visitors, except those hereinafter mentioned, entertained no company, had no occasion to leave the house, and saw nobody enter, except three strangers who came for the purpose of inspecting the upper apartment in the house where the plaintiff resided with his family. That house is what is commonly known as a two-family house, the ground flour of which was occupied by the plaintiff and family, and the upper floor by tenants who were preparing to move. A "to let" sign was posted on the outside of the house, and on the morning of April 3d, a man, a stranger to Mrs. Fienglas, called and inquired about the rooms upstairs. Mrs. Fienglas first showed the visitor through her own apartment, taking him through the public hall into the private hall of her apartment, which ran the full width of the house. The plaintiff's bedroom opened into this private hall, and the dresser upon which was contained the jewelry was but a step from the door.

After the examination of the plaintiff's apartment, the visitor requested that he be shown the apartment upstairs, and Mrs. Fienglas thereupon, leaving the visitor in the hall and within easy access of the open door leading into her bedroom, stepped through the door into the public hall and up the stairs to the upstairs apartment, for the purpose of finding out whether or not the tenants were at home, and to receive permission to show the visitor the said rooms upstairs. The visitor was alone in her apartment for a few minutes, and until Mrs. Fienglas returned and took him upstairs. After seeing the upstairs apartment, the visitor promised to return, but has never been seen since. There were others in the premises during that day. That night, in the presence of her family, Mrs. Fienglas went to her jewel case for the purpose of obtaining and wearing her jewelry, and discovered that it was gone. She immediately called to her husband and her children, a thorough search was made, but the jewelry was gone, and has not been found, nor seen since by Mrs. Fienglas, nor by any member of her household. Diligent efforts were made to find the jewelry, but it was claimed that the same was stolen. Plaintiff himself and his daughter Fanny both testified to joining in the search with Mrs. Fienglas, and both have testified that since that day they have never seen the jewelry in question.

The plaintiff has sufficiently brought himself within the terms of the policy, and shown himself to have suffered a loss covered by that policy. Paragraph 6 of the said policy, among other things, states:

"Affirmative proof of loss under oath, on forms provided by the company, must be furnished to the company at its home office in New York City within sixty days of the date of the discovery of the same; * * *" also "a statement containing sufficient evidence of the commission of a burglary, theft, or larceny to which the loss was due, and the belief of the assured as to the time of its occurrence."

The defendant claims that there was no evidence of a burglary, theft, or larceny within the terms and conditions of the policy. The

attorneys on both sides admit that there is a dearth of authority on the subject under consideration.   The defendant's attorney relies principally upon the recent case in the Appellate Term of Duschenes v. National Surety Co. of New York, 79 Misc. Rep. 232, 139 N. Y. Supp. 881.   In that case it was held as follows:

> "Where a policy of insurance provides that the insured shall produce direct and affirmative evidence that the loss of articles for which claim is made was due to burglary, theft, or larceny, and that the mere disappearance of such articles shall not be deemed such evidence, no recovery can be had on the policy on proof that plaintiff, while in her hotel apartment alone with her husband, placed a piece of jewelry in a box on a bureau, that next morning her husband left before she was awake, and that some time after returning to her apartment from breakfast the jewelry was missing, and after a thorough search neither it nor the box in which she had placed it could be found."

The disappearance of the jewelry in the Duschenes Case is consistent with its loss independently of theft, or with its misplacement by the plaintiff.   The case at bar differs from the one just quoted.   The policy of insurance under consideration, among other things, states that the insured must furnish affirmative proof of loss, a statement containing sufficient evidence of the commission of a burglary, theft, or larceny to which the loss was due, and the belief of the assured as to the time of its occurrence.   I believe that sufficient affirmative proof of loss by theft was furnished by the insured to the defendant.   Evidence beyond a reasonable doubt cannot be required under the terms of the policy. It is true that the disappearance of the jewelry, barren of every other circumstance, would not be sufficient evidence of the theft.   But disappearance of personal property is one of the most important elements of a theft, but we must take into consideration other facts worthy of attention, which are that the plaintiff is rectus in curia; the suspicious person, who said he wished to see the apartment which was to let upstairs, had an excellent opportunity of stealing the jewelry; the only hypothesis, under the circumstances, I think, is that he stole it.

It was the intention of the plaintiff to secure insurance from the defendant, which would insure.   Conclusive evidence of theft is frequently impossible to secure.   Thieves are cunning, and frequently leave no trace whatever of a theft, not even finger prints.   The policy should receive a reasonable construction.   It contains the language of the defendant, and should be liberally construed in favor of the plaintiff.   In the following case it was said:

> "The language of the promisor is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee."   White v. Hoyt, 73 N. Y. 505.

I think it was within the contemplation of the parties that the plaintiff should receive the amount of the loss under the circumstances disclosed by the record in this case.   I find as a matter of fact that the plaintiff has sustained the loss by theft as alleged in his complaint, that he has complied with all the provisions of the policy of insurance, and I render judgment for the plaintiff for the sum of $500, and grant a stay of five days.