LOUIS KROLOFF et al., Appellees, v. SOUTHERN SURETY COMPANY, Appellant.

**INSURANCE:** Proof of Loss—Waiver of Sworn Proofs. A policy provision for *sworn* proofs of loss is fully complied with by forwarding *unsworn* proofs of loss on which the company acted, and as to which it made no objection until after suit.

**INSURANCE:** Theft Insurance—Conclusive Proof. A policy provision
2    requiring *conclusive* proof of loss by theft is met by uncontradicted
circumstances showing theft.

**APPEAL AND ERROR:** Indefinite Assignment. Assignments of error
3    are fatally indefinite when they simply embrace a statement to the
effect that the court erred "in the reception and rejection of testi-
mony."

**TRIAL:** Instructions—Belated Exceptions. Exceptions to instructions
4    not filed within the time provided by statute will not be considered.

*Appeal from Pottawattamie District Court.*—E. B. WOODRUFF,
Judge.

## MAY 13, 1924.

ACTION to recover on a policy of theft insurance issued by
defendant. The policy was for $1,000. The jury returned a
verdict in favor of plaintiffs for $1,000, with interest. Judgment
was entered on the verdict. Defendant appeals.—*Affirmed.*

*Dressler, Neely & Morehouse* and *Tinley, Mitchell, Pryor,
Ross & Mitchell,* for appellant.

*Kimball, Peterson & Smith,* for appellees.

ARTHUR, C. J.—I. After the case was commenced, and be-
fore trial, plaintiff Louis Kroloff amended the petition, alleging
that the diamond in question was the property of his wife,
Fannie Kroloff, and she was joined as plaintiff in the suit. The
petition, in substance, alleged issuance of the policy covering
the residence and property of plaintiffs; that, on January 22,
1921, the residence of plaintiffs was entered by a burglar or
burglars, and that said burglar or burglars stole from said resi-
dence a diamond and some miscellaneous articles; that im-
mediate report was made to the company of the theft, and also
to the police department of Council Bluffs; that the local agent
reported the burglary to the home office of the company; that
the company made investigation and secured full knowledge of
the circumstances, and waived filing of loss on its form of proof;
that the diamond stolen was worth in excess of $1,000.

The answer denied every allegation of the petition, and al-

leged that the contract of insurance in question contained certain special agreements, among which were that the company should not be liable for any loss "unless the assured can show conclusively that loss was occasioned by burglary, larceny or theft, and the mere disappearance of property herein insured shall not be deemed as evidence that the loss was occasioned by burglary, larceny or theft."

Another provision of the policy was alleged, as follows:

"Any claim under this policy shall be made forthwith to the home office of the company, in the manner required by proof of loss form in use by this company, and shall be subscribed and sworn to by assured. The said form will be delivered to the assured upon demand."

The answer further alleged that the terms of the policy with respect to filing proof of loss had not been complied with.

Plaintiffs replied, averring that defendant was estopped from pleading or proving any failure to furnish proof of loss, by reason of the fact that it sent its agent to investigate the loss, and investigation of the loss was made by defendant, and no objections were made that proof of loss was insufficient; and that, by reason of such actions on the part of the defendant, there was waiver of proof of loss, strictly as provided in the policy.

II. On the trial, plaintiffs, Louis Kroloff and Fannie Kroloff, testified that Fannie Kroloff was the owner of the ring in controversy, and to the loss of the ring and the circumstances attending the loss; that F. C. Hendricks & Son, local agents of defendant company, were immediately notified of the burglary and the loss of the diamond. Louis Kroloff testified that, upon discovery of the loss, he immediately applied to Floyd Hendricks, of the local agent firm, for a form to make out proof of loss, and that Hendricks said, "All right, we will make one out right now;" that proof of loss was then made out by Hendricks, and he signed it; that Hendricks said he would send it in to the company.

Floyd Hendricks, called by defendant, testified that he represented defendant company as local agent, soliciting and writing insurance for the company; that Louis Kroloff had told him of the loss of the diamond, and that he wrote down Kroloff's

statements and sent them to the home office of the company; that the blank which he used was a form of notice of loss of another insurance company; that the form of notice of loss used was similar to that used by defendant company; that defendant company acknowledged receipt of the notice of loss which he sent them; that an agent of the company came out to investigate, and he went with him to the Kroloff house, and they investigated the matter.

At the close of plaintiffs' testimony, defendant moved for a directed verdict, on the grounds that the policy provided that the company should not be liable for any loss unless assured showed conclusively that the loss was occasioned by burglary, larceny, or theft, and that the mere disappearance of property insured should not be deemed evidence that the loss was occasioned by burglary, larceny, or theft; and that the evidence was insufficient to show that the loss alleged to have occurred was occasioned by burglary, larceny, or theft. The motion was overruled, and no exceptions were taken to the ruling. At the close of all the evidence, the motion to direct verdict was renewed and overruled, and no objections were taken to the ruling. The case was submitted to the jury, and verdict was returned in favor of plaintiffs.

III. Appellant assigns errors relied upon for reversal, based upon insufficiency of the proof of loss; errors in the admission and exclusion of testimony; rulings on motions made during the trial, including motions to direct verdict; assignments attacking each paragraph of the instructions; error in not granting a new trial; and especially, error in submitting the case to the jury and not afterwards granting a new trial on the ground that no recovery can be had upon the policy because the evidence does not show conclusively, by direct and positive testimony, that loss of the diamond in question was occasioned by burglary, larceny, or theft.

The policy provides that:

"Any claim under this policy shall be made forthwith to the home office of the company in the manner required by proof

1. INSURANCE: proofs of loss: waiver of sworn proofs.

of loss form in use by the company, and shall be subscribed and sworn to by the assured. The said form shall be delivered to the assured upon demand."

Appellees introduced testimony to show that Hendricks, local agent of the company, immediately after the loss of the diamond was discovered, was notified of the loss; that Louis Kroloff requested Hendricks to furnish him a blank on which to make out proof of loss, and Hendricks thereupon said, "All right, we will make it out right away;" that proof of loss was made out and left with Hendricks, to be sent to the company; that on the form used there was no affidavit, and the statement was not sworn to. The record does not disclose the exact form of blank in use by the company. Hendricks, agent of the company, testified that the form on which he made out the statement of loss for Kroloff was made out on a form used by another insurance company, which form was similar to the one in use by defendant company; that he sent to the company the proof made out; and that it was received by the company.

It appears without dispute that, upon receipt of the statement or proof made by appellees and received by the company, the company sent out a special agent to investigate the matter of claimed loss, and that said agent and Hendricks went to the premises and made an investigation. It also appears that appellees notified appellant of the claimed burglary. The investigation was made by the company, through its agents, in pursuance of the statement furnished by appellees, and no other or further statement, notice of loss, or proof of loss was requested by the company. The statement or proof furnished by appellees was introduced in evidence, without objection.

The court, in instructions, stated to the jury the claims of the parties respecting proof of loss; that the burden was on plaintiffs to show that they furnished proof of loss, as required by the policy, or that defendant accepted the proof furnished, without objection thereto, and waived forfeiture of the policy by its acts and conduct. He also submitted to the jury the question of fact as to whether or not defendant acquiesced in Exhibit 9 (the statement furnished) as a sufficient compliance with the requirements of the policy relating to claim of loss, and whether

defendant waived any other or further claim of loss.  Appellant contends that there was not properly in the record any evidence upon which any question could properly have been submitted to the jury as to whether or not Exhibit 9 (the proof of loss furnished) was a substantial compliance with the terms of the policy, and was so accepted by defendant.  Counsel also urge that whether Exhibit 9 was a proof of loss and a substantial compliance with the terms of the policy was a question of law, for the court to determine, and that it was error to submit such question to the jury.

Complaint is also made of the instructions submitting the question to the jury.  We are precluded from review of any claimed errors in the instructions given, as hereinafter shown. Whether right or wrong, the instructions given are the law of the case.  No objections or exceptions were taken and preserved to the instructions, as provided by statute.  No instructions were requested, and no errors properly assigned as to the admission and exclusion of evidence.  However, in any event, the company having made investigation of the premises where the claimed loss occurred, and the facts and circumstances, through its agents, and having demanded no further proof of loss than that furnished, form of proof of loss in strict compliance with the policy was waived.  *Ruthven Bros. v. American Fire Ins. Co.,* 102 Iowa 550; *Heusinkveld v. St. Paul F. & M. Ins. Co.,* 106 Iowa 229; *Lake v. Farmers' Ins. Co.,* 110 Iowa 473; *Horwitz v. United States Fid. & Guar. Co.,* 95 Wash. 455 (164 Pac. 77).

IV.   Appellant raises the question, by assignment of error, that the evidence produced by appellees was insufficient to prove a loss by burglary or theft of the diamond for which recovery was sought.  The evidence bearing upon the loss of the diamond was circumstantial evidence only.  The policy provides:

2. INSURANCE:
    theft insurance:
    conclusive proof.

"Unless the assured can show conclusively that loss was occasioned by burglary, larceny or theft, and the mere disappearance of property herein insured shall not be deemed as evidence that the loss was occasioned by burglary, larceny or theft."

Counsel for appellant cites cases holding, in effect, that no recovery can be had upon a policy indemnifying against loss by burglary, theft, or larceny where the evidence merely

shows that property covered by the policy is missing. Such rule may be conceded. But in the instant case, evidence of more than the mere loss of the diamond was offered by appellees. Fannie Kroloff testified that she kept the diamond in a drawer of a chiffonier, wrapped in tissue paper, in a little box, where she had placed it a few days before the loss; that, on the day she discovered the loss of the diamond, she went upstairs in their house, where the chiffonier was located, and found the drawers open and things scattered about; that the box containing the diamond had been opened and thrown on top of the chiffonier, with some of the tissue paper, and the diamond was gone. Mr. Pill, father of Mrs. Kroloff, visited his daughter's home on the day the diamond was missing, and he testifies that he saw a little white box and a paper on the chiffonier, and that one of the drawers was opened. Mr. Kroloff testified that his wife put the diamond in the chiffonier drawer, along with articles belonging to her; that, when he came home, on the day the diamond was missing, he heard his wife talking excitedly about the diamond's being gone; that he went upstairs, and found the drawers pulled open in the chiffonier, and the little drawer where the diamond was kept, open; that articles were scattered around; that he saw the box in which the diamond was kept, lying on top of the chiffonier; that the paper in which the diamond was wrapped was lying on top of the chiffonier; that the large drawers in the chiffonier were all open and mussed up; that some other miscellaneous articles were taken; that he had seen the drawers of the chiffonier undisturbed, but a short time before. It was also shown that none of the persons in the house, unless it was the maid, were in a position to have taken the ring, and that appellees did not take the diamond out of the box in which it was kept.

It has been held that circumstantial evidence surrounding the loss of property may be sufficient to carry a case to the jury as to whether the loss was occasioned by burglary or theft, even where the policy provides, as in the instant case, that it must be shown conclusively that the loss was occasioned by burglary or theft, and that mere disappearance of the property insured will not be sufficient. *Emery v. Ocean Acc. & Guar. Corp.*, 209 Mich. 295 (176 N. W. 566); *Miller v. Massachusetts Bond. &*

*Ins. Co.*, 247 Pa. 182 (L. R. A. 1915 D, 615, 93 Atl. 320) ; *Horwitz v. United States Fid. & Guar. Co.*, supra. The evidence offered was undisputed. It has been frequently held that conclusive proof is made by uncontradicted evidence of all the circumstances. *Emery v. Ocean Acc. & Guar. Corp.*, supra; *State v. Minneapolis & St. L. R. Co.*, 76 Minn. 469 (79 N. W. 510). *Emery v. Ocean Acc. & Guar. Corp.*, supra, is a case very similar to the one under consideration. In that case, plaintiff lost a diamond pin, in the fore part of June. On June 9th, she became satisfied that it had been stolen. It was claimed in that case, as in this, that, at most, the evidence showed that the pin was missing. It was shown by the testimony that the pin was kept in a drawer, under a handkerchief, and was wrapped in white tissue paper, as in this case; that she placed the pin in a receptacle, about the 3d of June, and found on the 9th that it was gone; that the paper in which it was wrapped was left, as in this case. As in the instant case, the testimony showed that search was made, but that they were unable to find the pin. It was also shown, as in this case, that members of the family had not taken the pin. In that case, as in this, the maid who was employed in the family had left, soon after the theft. It was held that it was a question of fact for the jury to determine whether or not the property had been stolen, and that it was competent to establish the fact by circumstantial evidence. The court said:

"To furnish direct proof that an article of the character involved here has been stolen, is usually attended with much difficulty. Nothing has been called to our attention in the policy which would prevent the fact being shown by circumstantial evidence. If it were competent for plaintiff to establish the fact that it had been stolen by circumstantial evidence, we think the testimony was sufficient to support an inference that the pin had been stolen."

In *Miller v. Massachusetts Bond. & Ins. Co.*, supra, it was contended that the words "direct and affirmative evidence" meant proof that someone had seen the commission of the theft. The court held that such a strained construction would only make the policy frivolous and ineffective; and it was held that the circumstances of the loss were such that it was a question

for the jury to determine whether or not theft had been proved.

V.   Appellant complains of rulings of the court overruling motions to strike amendments to the petition and the reply and amendments thereto.   No exceptions were taken to the rulings. However, the motions were without merit.

VI.   Error is assigned, based on rulings of the court on admission and exclusion of evidence.   The only statements made in the assignments and motion for a new trial are these:   "The court erred in admission of testimony offered by plaintiff;" and "the court erred in rejection of testimony offered by the defendant."   Such assignments are not sufficiently definite to warrant review.   However, we have examined the record, and find no error.   Nearly, if not quite all, of the paragraphs of the instructions are attacked as erroneous.   The verdict of the jury was rendered on October 7, 1921.   On October 16, 1921, appellant filed motion for a new trial, setting forth objections and exceptions to instructions.   No other objections or exceptions were taken to the instructions. Extension of time was not asked for and was not given, for filing objections and exceptions to instructions.   Motion for new trial, when embodying such exceptions, must be filed within the five-day period provided by Chapter 11, Acts of the Thirty-eighth General Assembly, and unless it is so filed, the exceptions cannot be reviewed by this court.   We have frequently passed upon this question.   *Carruthers v. Campbell,* 195 Iowa 390; *Swegle v. Chicago, B. & Q. R. Co.,* 196 Iowa 413.

3. APPEAL AND ERROR: indefinite assignment.

4. TRIAL: instructions: belated exceptions.

We have carefully examined the entire record, and have in the above discussion considered all the questions that may be reviewed under the record, and find no error.

Results in affirmance.—*Affirmed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.